# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § § | |
| v. | § § | Criminal No. **3:21-MJ-1152-BK** |
| **SERAFINA LYNN LICCARDI** | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Serafina Lynn Liccardi's Motion to Revoke Detention Order (with Incorporated Brief in Support) ("Motion") (Doc. 16), filed on December 17, 2021. Defendant Serafina Lynn Liccardi moves, pursuant to 18 U.S.C. § 3145(b), for the court to review the detention order entered by the Magistrate Judge. After consideration of the Motion, the Government's Response (Doc. 18), filed on December 30, 2021, the record, and applicable law, the court **denies** Defendant's Motion to Revoke Detention Order (Doc. 16); and **affirms** the Order of Detention Pending Trial (Doc. 11), entered by the Magistrate Judge on December 3, 2021.

### I. Factual and Procedural Background

On November 30, 2021, Federal Protective Service Inspector Joseph Beranek ("Inspector Beranek") filed the Criminal Complaint against Defendant Serafina Lynn Liccardi ("Defendant" or "Ms. Liccardi"), attaching his sworn and signed affidavit ("Affidavit"). Def.'s Ex. 1. The Criminal Complaint and Affidavit allege that Ms. Liccardi "[a]ssault[ed] a federal officer or employee" using "physical contact" when she struck a Federal Protective Services Officer[1] ("PSO") after she breached security at the Earle Cabell Federal Building on November 29, 2021,

---

[1] The record supports that Ms. Liccardi struck PSO Karen Wheeler ("Officer Wheeler"). Detention Hr'g Tr., December 3, 2021 ("Hr'g Tr.") 6. In particular, the testimony of Inspector Beranek, video, and photo of Officer Wheeler support that Defendant struck Officer Wheeler in the face.

in violation of 18 U.S.C. 111(a).[2] *Id.* at 2, 3. In his Affidavit, Inspector Beranek swore that Defendant "refus[ed] to comply with a federal mask mandate in place at the Earle Cabell Federal Building." *Id.* at 3. Ms. Liccardi was taken into custody that same day, and an arrest warrant was returned on November 30, 2021. Arrest Warrant (Doc. 13).

In its motion for detention, the Government stated that this case involves a "crime of violence," *see* 18 U.S.C. § 3156(a)(4), and contended that Ms. Liccardi should be detained "because there are no conditions of release which will reasonably assure . . . Defendant's appearance as required [and the] [s]afety of any other person and the community." Gov't's Mot. for Detention (Doc. 3) 1-2. On December 3, 2021, Defendant appeared before United States Magistrate Judge Renée Toliver for her detention hearing. At the hearing, the Government amended its motion "to indicate eligibility [for detention] under serious flight risk." Hr'g Tr. 2. Following the hearing, Magistrate Judge Toliver determined that, based on the weight of the evidence against Defendant, her prior criminal history, and her history of violence or use of weapons, no condition or combination of conditions of release would reasonably assure the safety of any other person and the community.[3] Order of Detention Pending Trial (Doc. 11). For these reasons, she ordered Defendant detained pending trial.

In her Motion, Ms. Liccardi contends that this case is not eligible for detention under 18 U.S.C. § 3142(f)(1)(A), as felony assault under 18 U.S.C. § 111(a) does not qualify as a "crime of violence" as defined in the Bail Reform Act of 1984. Def.'s Mot. 4. Alternatively, Defendant

---

[2] This statute penalizes "[w]hoever . . . forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties." 18 U.S.C. 111(a)(1).

[3] Significantly and as discussed below, the Magistrate Judge did not find that the Government proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure Ms. Liccardi's appearance as required.

argues that the Government failed to prove that no combinations of conditions would ensure public safety or her appearance at trial. *Id.* at 1, 12. The Government responds that the Magistrate Judge properly ordered Ms. Liccardi's detention because the offense charged against her constitutes a crime of violence, and she is a "clear danger to the community." Gov't's Resp. 6. In the alternative, it argues that Defendant "is eligible for pretrial detention as a serious flight risk." *Id.*

## II.     Legal Standard

A district court reviews a pretrial detention order *de novo* and makes an independent determination of the pretrial detention or the proper conditions for release. *United States v. Karriem*, 2006 WL 1489484 at *2 (N.D. Tex. May 18, 2006) (citing *United States v. Fortna*, 769 F.2d 242, 249 (5th Cir. 1985)). Under 18 U.S.C. § 3145(b), "[i]f a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." This review does not mandate a new evidentiary hearing, and the court may rely on the evidence introduced before the magistrate judge. *Id.* (citing *United States v. Baker,* 703 F. Supp. 34, 36 (N.D. Tex. 1989)). Under the Bail Reform Act of 1984, "pretrial detention can be ordered only in a case that involves one of the circumstances listed in [18 U.S.C.] § 3142(f) and in which the judicial officer finds, after a hearing, that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and [the] community." *United States v. Zaccaria*, 347 F. App'x 984, 985 (5th Cir. 2009) (citing *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992)) (internal quotations and citations omitted).

As a threshold matter, and in accordance with the guidance in *Byrd*, the Government must demonstrate that one of the circumstances listed in Section 3142(f) applies that warrants a detention hearing. Section 3142(f) provides:

> (f) Detention hearing. The judicial officers shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of the person as required and the safety of any other person and the community—
>
>> (1) upon motion of the attorney for the Government, in a case that involves—
>>
>>> (A) a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;
>>>
>>> (B) an offense for which the maximum sentence is life imprisonment or death;
>>>
>>> (C) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46;
>>>
>>> (D) any felony if such person has been convicted of two or more offenses described in subparagraphs (A) through (C) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (A) through (C) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; or
>>>
>>> (E) any felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm or destructive device (as those terms are defined in section 921), or any other dangerous weapon, or involves a failure to register under section 2250 of title 18, United States Code; or
>>
>> (2) upon motion of the attorney for the Government or upon the judicial officer's own motion, in a case that involves—
>>
>>> (A) a serious risk that such person will flee; or
>>>
>>> (B) a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

18 U.S.C. § 3142(f).

Once the Government proves that one of these circumstances applies, the court may order pretrial detention only if it also finds that no condition or combination of conditions will reasonably

assure the appearance of the person as required and the safety of any other person and the community. Thus, in the Fifth Circuit, "a defendant's threat to the safety of other persons or to the community, standing alone, will not justify pre-trial detention." *Byrd*, 969 F.2d at 110.

"[I]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person or the community," a court must consider: "(1) the nature and circumstances of the offense charged . . . ; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . ; and (4) the nature and the seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). In determining whether a defendant is a flight risk, the court must determine by a preponderance of the evidence that no condition or combination of such will reasonably assure the defendant's appearance. *Fortna*, 769 F.2d at 250.

> "With respect to the quantum or character of proof, . . . the [Bail Reform] Act provides that the facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence."[4]

*Id.* (quoting § 3142(f)) (internal quotation marks omitted).

### III.   Analysis

After reviewing the record and applicable authority, the court determines that the Magistrate Judge should not have ordered Ms. Liccardi's pretrial detention pursuant to 18 U.S.C. § 3142(e)(1).[5] The Magistrate Judge correctly found that this case involves a crime of violence,

---

[4] "Clear and convincing evidence" is "that weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case." *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 396 (5th Cir. 2004) (citation and internal quotation marks omitted).

[5] Under 18 U.S.C. § 3142(e)(1), "[i]f, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the

*see* Hr'g Tr. 62-63; however, the court disagrees with the Magistrate Judge's finding "that the Government has established by clear and convincing evidence that there are no conditions or combination of conditions of release which would reasonably assure the safety of another person and the community." *Id.* at 63. Moreover, the Magistrate Judge did not find that the Government proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure Defendant's appearance as required. Accordingly, pretrial detention was not proper under 18 U.S.C. § 3142(e)(1).

The Bail Reform Act allows a judicial officer to hold a hearing to make a pretrial detention determination "upon motion of the attorney for the Government, in a case that involves . . . a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed." 18 U.S.C. § 3141(f)(1)(A). The term "crime of violence," as used in this section, means:

> (A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another;
>
> (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense; or
>
> (C) any felony under chapter 77, 109A, 110, or 117.

18 U.S.C. § 3156(a)(4).

The parties agree that an offense in violation of Section 111(a) does not specifically have as an element the "use, attempted use, or threatened use of physical force." *See* 18 U.S.C. § 3156(a)(4)(A); *see also* Def.'s Mot. 7-9; Gov't's Resp. 9-10. Ms. Liccardi argues that, although an offense under Section 111(a) may involve physical contact, this does not satisfy the "elements

---

appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial."

Memorandum Opinion and Order – Page 6

clause" of Section 3156(a)(4)(A). *See* Def.'s Mot. 9. The Government does not dispute this. *See generally* Gov't's Resp. Similarly, both parties contend that the so-called "residual clause" of 3156(a)(4)(B) applies here.[6] Def.'s Mot. 4-5; Gov't Resp. 7-8. Moreover, Defendant argues that, under the categorical approach,[7] Section 111(a) is "categorically nonviolent." Def.'s Mot. 10. On the other hand, applying the modified approach,[8] the Government contends that Ms. Liccardi's

---

[6] In contradiction of her argument that it is applicable here, Ms. Liccardi simultaneously argues that the residual clause of Section 3156(a)(4)(B) is unconstitutionally vague. According to her:

> Simply put, this Court *cannot* meaningfully apply the statutory language of § 3156(a)(4)(B) without devolving into arbitrary confusion. The language requires the Court to apply an uncertain risk standard to the judicially imagined ordinary case of a crime. That "ordinary case" must exclude cases involving weapons or "physical injury," as that term is used in § 111(b). It is a hopeless enterprise, and the process required by the statutory text is untenable and inconsistent with the judicial function.

Def.'s Mot. 11 (emphasis in original). The Government responds that

> [t]he Supreme Court has thus "invalidated two kinds of criminal laws as 'void for vagueness': laws that define criminal offenses and laws that fix the permissible sentences for criminal offenses. [*Beckles v. United States*, 137 S. Ct. 886, 892 (2017)] (emphasis in original). But standards that "merely guide the exercise of a court's discretion"—like the United States Sentencing Guidelines—do not define a criminal offense or "fix the permissible range of sentences." *Id.* Nor do they trigger the primary concerns of the void-for-vagueness doctrine: "providing notice and preventing arbitrary enforcement." *Id.* at 894. Accordingly, they are not subject to a void-for-vagueness challenge under the Due Process Clause. *Id.* at 895. . . . Like the Sentencing Guidelines, Section 3156(a)(4)(B)'s crime-of-violence definition, which applies for purposes of pretrial-detention eligibility under Section 3142, is not subject to a void-for-vagueness challenge.

Gov't Resp. 8. The court agrees with the Government that § 3156(a)(4)(B) does not define a criminal offense or fix a sentence for a criminal offense. The statute, in conjunction with Section 3142(f)(1), simply assists courts in determining whether a detention hearing is proper. Therefore, the court determines that Defendant's claim that Section 3156(a)(4)(B) is unconstitutional fails.

[7] Under the "categorical approach," courts "consider whether the *elements of the offense* are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender." *James v. United States*, 550 U.S. 192, 202 (2007), *overruled on other grounds by Johnson v. United States*, 576 U.S. 591 (2015) (emphasis in original).

[8] Courts apply the "modified categorical approach" when a statute is divisible or has "multiple alternative elements." *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). According to the Government, Section 111(a) is such a divisible statute, Gov't Resp. 9, that requires, in part, a finding that Defendant completed the offense by "forcibly assault[ing], resist[ing], oppos[ing], imped[ing], intimidat[ing], or interfer[ing] with [a] person designated in section 1114," 18 U.S.C. § 111(a)(1), and thus "by its nature, involves a

**Memorandum Opinion and Order – Page 7**

offense qualifies as a crime of violence under Section 3156(a)(4)(B) because "[i]t is possible to both violate Section 111(a) and make physical contact with a victim during this violation without using physical force against the victim." Gov't's Resp. 11 (citing *United States v. Ramirez*, 233 F.3d 318, 322 (5th Cir. 2000), *overruled on other grounds by United States v. Cotton*, 535 U.S. 625 (2002)). According to the Government, "there is a 'strong probability' that forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with a federal officer in a manner that involves physical contact will result in the application of physical force or devolve into a violent confrontation." *Id.* (citation omitted). The Government points out, however, that "[t]he Fifth Circuit has not squarely addressed whether courts should use the categorial [or modified categorical] approach to determine what constitutes a crime of violence under the Bail Reform Act." *Id.* at 12. As such, the court is not inclined to use either the categorial or modified categorical approach here.

"[T]he Government need not show that the 'charged offense' itself presents one of the circumstances in [section] 3142(f) so long as the defendant's case involved any offense or other [section] 3142(f) factor that could serve as the statutory basis for detention." *Zaccaria*, 347 F. App'x at 986 (citing *Byrd*, 969 F.2d at 110). "In other words, it is not necessary that the charged offense be a crime of violence; only that the case involve a crime of violence or any one or more of the [section] 3142(f) factors." *Byrd*, 969 F.2d at 110. "But the proof of a nexus between the non-violent offense charged and one or more of the six [section] 3142(f) factors is crucial." *Id.* The record indicates that Ms. Liccardi violently breached the Earle Cabell Federal Building on November 29, 2021, giving rise to this charge against her. Inspector Beranek testified that "[s]he

---

substantial risk that physical force against the person . . . of another may be used in the course of committing the offense[.]" (quoting 18 U.S.C. § 3156(a)(4)(B)) (citing *United States v. Picazo-Lucas*, 821 F. App'x 335, 339-40 (5th Cir. 2020)).

violently threw her body, getting herself away from the two PSOs, then shoved [a] PSO [], reset herself, and then threw a punch, hitting [the] PSO [] in her face." Hr'g Tr. 6. Therefore, even if the court accepts Ms. Liccardi's contention that Section 111(a) is not a crime of violence as true, there is a clear nexus between that charged offense and the "crime of violence" factor of Section 3142(f), as Defendant allegedly physically assaulted another individual. *See* 18 U.S.C. § 3142(f)(1)(A). Furthermore, while Defendant may be correct that a Section 111(a) offense does not necessarily include specific elements of violence—that is, a jury could properly find that she violated Section 111(a) without finding that she used violence—this does not prevent the court from determining that her alleged offense and violation of the statute involved a crime of violence based on her actual and specific conduct during the alleged offense. *See Zaccaria*, 347 F. App'x at 986; *Byrd*, 969 F.2d at 110. Accordingly, the court determines that Ms. Liccardi's charged offense involved a crime of violence pursuant to Section 3142(f)(1)(A), and thus the Magistrate Judge properly held the detention hearing.

  The court's determination that one of the Section 3142(f) factors applies is not a sufficient basis for it to properly order Ms. Liccardi's pretrial detention. *See Byrd*, 969 F.2d at 110. To order pretrial detention, the court must also determine that no condition or combination of conditions will reasonably assure her appearance as required and the safety of any other person and the community. *See* 18 U.S.C. § 3142(e)(1). The Magistrate Judge determined at the detention hearing that the Government did not "establish[] that this is a case involving serious risk of flight." Hr'g Tr. 62. After conducting a *de novo* review, the court agrees, and it finds that the Government has not established by a preponderance of the evidence that Ms. Liccardi is a serious flight risk.

  The Government urges the court to find that no condition or combination of conditions will reasonably assure Defendant's appearance as required, but the only evidence it presents is the

Memorandum Opinion and Order – Page 9

testimony of Inspector Beranek in which he states that she moved to the Dallas, Texas[9] area from North Carolina; that, aside from her partner, Mr. Miller, she has no contact with family members; and that he—Inspector Beranek—does not believe that Defendant "is an individual likely to comply with authority over her." *See id.* at 14, 34. The court is not persuaded by this evidence alone. As such, the court determines that the Government has not proved by a preponderance of the evidence that Ms. Liccardi is a flight risk. Accordingly, the court need not discuss whether there is any condition or combination of conditions that will reasonably assure Defendant's appearance as required.

The record, however, does support a determination that Defendant poses a threat to the safety of others and the community. The Magistrate Judge concluded that a finding that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community is supported by clear and convincing evidence. In reaching this conclusion, the Magistrate Judge explained as follows:

> The credible evidence establishes Defendant committed the offense alleged in the Complain; thus, the Court finds probably cause to believe that Defendant committed that offense. Defendant admits to a significant history of mental health diagnosis and treatment, which she voluntarily ceased. Defendant's reaction of November 29, 2021, to the officers securing the federal building was wholly irrational and violent. Viewing Defendant's prior violent offense and her social media posts advocating violence, not in a vacuum, but through this lens, the Court concludes that none of the conditions of release it could impose would reasonably assure the safety of the community or another person.

Order of Detention Pending Trial (Doc. 11); *see* Hr'g Tr. 63-64.

Ms. Liccardi disagrees and argues as follows:

> What the Court was confronted with is a 53 year-old woman, who receives disability, who has a single prior from more than 15 years ago, for which she received a probationary sentence, who behaved terribly one afternoon, physically

---

[9] According to Defendant's counsel, Ms. Liccardi has lived in Dallas, Texas, area for five years. Hr'g Tr. 51.

Memorandum Opinion and Order – Page 10

>	lashing out at a security guard in a moment of true distress.  The video shows that Ms. Liccardi certainly pushed Officer Wheeler off of her; the video shows that Ms. Liccardi apparently took a swipe at Officer Wheeler, possibly missing, or possibly making contact with her mask or even her face.  She did not cause injury.  She did not carry a weapon.  She has made nasty Facebook posts, but in an age when U.S. Congressmen are being reprimanded for posting cartoons videos of themselves murdering a fellow Congresswoman, that hardly seems to be a legitimate basis for detention.  While the Court announced that Ms. Liccardi "voluntarily ceased maintaining" and was "refusing to continue" her mental health treatment, the information provided in the Pretrial Services Report actually reported that Ms. Liccardi had sought treatment for her PTSD and Bipolar Disorder within the last few years, that she had been prescribed the wrong medication, and as a result had "lost trust in the system and stopped seeking services."  There was no indication that Ms. Liccardi was refusing mental health treatment.  To the contrary, Ms. Liccardi is absolutely willing to undertake mental health counseling as part of a release plan.
>
>	While Ms. Liccardi's behavior on November 29th was inexcusable, this is not a case in which she should be detained.  There are certainly release conditions that would both ensure Ms. Liccardi's attendance at hearings and protect people in the community.  The Court could order Ms. Liccardi to adhere to any combination of: GPS tracking, home confinement, restricting courthouse visits to criminal case appearances, third-party custodian supervision, mental health counseling. This just is not a person who cannot be safely released.  This is a case in which a probationary sentence would not be unheard of.

Def.'s Mot. 18-19.

The court addresses each of these arguments in turn.  With respect to Defendant's argument that she "physically lash[ed] out at a security guard in a moment of true distress," this is not supported by evidence in the record.  From what the court can reasonably infer, Ms. Liccardi was upset because the PSOs would not permit her to enter the building without a mask.  Frankly, any "distress" at the time of her "lashing out" was caused solely by Defendant.  The video shows there was a confrontation—initially a verbal confrontation—in which the PSOs attempted to stop Defendant from passing through the magnetometers without a mask.  This was followed by the PSOs holding or restraining her, which was then followed by Ms. Liccardi resisting or trying to get away.  Ultimately, according to Inspector Beranek, Ms. Liccardi hit Officer Wheeler in the face, *see* Hr'g Tr. 6, 22-24.  In her Motion, Ms. Liccardi acknowledges that she "apparently took

**Memorandum Opinion and Order – Page 11**

a swipe at Officer Wheeler, possibly missing, or possibly making contact with her mask or even her face." Def.'s Mot. 18. Defendant minimizes what actually occurred.

The court determines that, whether with a closed fist or open hand,[10] Ms. Liccardi made contact with Officer Wheeler's person. Not only is this supported by Inspector Beranek's testimony, but a photograph of Officer Wheeler taken after the incident also shows a large area of redness on the right side of her face. Def.'s Ex. 4. This is consistent with some type of force used against Officer Wheeler. Stated differently, there is no doubt in the court's mind that physical contact was made, whether it was made with a closed fist or slap is wholly beside the point. The video also shows Officer Wheeler recoiling or stepping back as the blow is thrown or quickly thereafter. The complete view of this portion of the incident is partially blocked because of the position of another PSO. Further, to maintain order and bring the situation under control, Inspector Beranek threatened Ms. Liccardi with the use of his taser if she did not calm down and stop resisting or struggling. This is supported by the video recording of the incident that shows Inspector Beranek placing his taser against her back as he pinned her to a table in the security area, as well as his testimony explaining what occurred. *See* Hr'g Tr. 6.

Ms. Liccardi further acknowledges that she "has made nasty Facebook posts." Def. Mot. 18. She contends, essentially, that if United States Congressman Paul Gosar ("Congressman Gosar") is "reprimanded"[11] for posting a cartoon video depicting him "murdering" fellow United States Congresswoman Alexandria Ocasio-Cortez, her Facebook posts "hardly seem[] to be a

---

[10] During the cross-examination of Inspector Beranek at the detention hearing, defense counsel attempted to make a distinction as to whether Ms. Liccardi struck Officer Wheeler with an open hand or closed fist. *See* Hr'g Tr. 30. This is of no moment, as either manner of striking Officer Wheeler involves physical contact and force, and probable cause exists to show that the blow was done knowingly and intentionally.

[11] Congressman Gosar was censured by Congress, not "reprimanded" as Defendant contends, for the video posting Ms. Liccardi references.

legitimate basis for detention." *Id.* This argument is a red herring. One incident has nothing to do with the other. While the court certainly does not condone Congressman Gosar's video posting—or any similar posting by **any** member of Congress—the matter before it is whether *Ms. Liccardi* (and no one else) is a danger to the safety of another and the community and, if so, whether there is any condition or combination of conditions that the court could impose to reasonably assure the safety of another and the community. Congressman Gosar's social media posts or any subsequent consequence of such posts does not assist the court in making the determination that it needs to make in this case.

Furthermore, the court agrees with Ms. Liccardi's characterization of her Facebook posts as "nasty," but some fall within the realm of free speech. Although not models of pellucid draftsmanship or displays, some of Defendant's posts can be read to mean that Ms. Liccardi will defend herself if she is physically attacked, robbed, or threatened. Others, however, go "beyond the pale" by condoning violence and murder. Some of Defendant's posts presented to the court include:

- Pictures of a dagger or knife concealed on an armband, with a caption in which Ms. Liccardi states, "My New Medieval Blade Cuff Concealed Carry Weapon of Scissors. Yes, I will be running with scissors." Def.'s Ex. 2.
- Pictures of a bat wrapped in red fabric with a set of chains attached to the top, with a caption in which Ms. Liccardi states, "Turning my mini Louisville Slugger into a Medieval Flail." *Id.*
- A picture of "[a] dagger or knife . . . concealed on an arm band [sic] and some type of small bat object with chains attached to the end of it," with a caption in which Ms. Liccardi states, "The next scumbag that thinks they're going to get away with robbing me is going to get

murdered. I'm prepared to f*** up anyone that approaches me wrong." Hr'g Tr. 12; *see* Def.'s Ex. 2.

- A graphic stating, "I'm about to turn some heads. If you don't know me by now… YOU WILL SOON[.]" Def.'s Ex. 2.

- An article titled, "BREAKING: At least 8 people dead in mass shooting at Indianapolis FedEx facility," with a caption in which Ms. Liccardi states, "GO, GUNMAN!!! SEE FEDEX… I TOLD YOU IT WAS COMING FOR YOU!! GODS [sic] EYES ARE ON YOU AND BEZOS NOW, MOTHERF*****S." Def.'s Ex. 22; *see* Hr'g Tr. 13-14.

Of particular concern to the court are the last two posts previously listed. In the first of the two last quotes, the court has no pause in reasonably inferring that she is about to do something of such a nature that "causes a stir," draws attention to herself, or "acts up." This is so because of the plain nature of these posts, her history of violent behavior—which include the conviction for assault with a vehicle in 2005 and the protective order issued against Defendant in New Jersey on November 8, 2008, and still in effect today according to Court's Exhibit 1. [12, 13]

This last post speaks for itself in which Defendant emphatically praises the gunman for killing eight people at a Federal Express facility in Indianapolis, Indiana. Publicly condoning the killing of eight persons is beyond "nasty." It is frightening that a person would have the temerity to post such statements in support of a gunman who murdered eight persons.

---

[12] Protective orders are usually issued against a person because of violence or stalking, or some other conduct that places another person in harm's way.

[13] *See* Court's Ex. 1, 5. Although the Pretrial Services Report was not admitted into evidence at the detention hearing, it was discussed at the detention hearing as part of the record, and the court finds it helpful in resolving the issues before it; thus, the Pretrial Services Report is hereby admitted as Court's Exhibit 1, and the court **directs** the clerk of court to file this exhibit **under seal**.

Additionally, Ms. Liccardi acknowledges she has mental health disorders. According to the United States Probation Officer who prepared the Pretrial Services Report:

> [D]efendant stated [that] she was diagnosed with Post-Traumatic Stress Disorder (PTSD), bipolar disorder, depression, and mania. . . . At the time of her diagnosis, she recalled being prescribed and using Lexpro; however, she advised she stopped using the medication in 2007. [D]efendant described her mental illnesses as "situational." The defendant recalled a time in 2017, when she attempted to seek mental health treatment through Metrocare Services in Dallas. She indicated medical staff had prescribed her the wrong medication and when confronted, they advised her to take them regardless. The defendant revealed at that time she lost trust in the system and stopped seeking services.

Court's Ex. 1. The court agrees, therefore, with the Magistrate Judge's finding that "Ms. Liccardi admitted to a significant history of mental health diagnos[e]s and treatment [that] she has voluntarily ceased maintaining, [and] that she is refusing to continue." Hr'g Tr. 63. Moreover, for someone who is bold enough to attempt to breach a security checkpoint secured by at least four armed officers and ultimately resists and attacks one of those officers, the court has no way of knowing how Defendant will act or respond under any given circumstance or situation. Although Ms. Liccardi's full medical or mental health records were not presented during the hearing, the court is nevertheless convinced that no condition or combination of conditions it could impose against her would reasonably assure the safety of another or the community.

Ms. Liccardi argues that there are a number of conditions or combinations of conditions that the court could impose to protect persons and the community from her. The court disagrees and will address in turn each condition presented or advanced by Defendant.

With respect to GPS tracking, the device attached to a person can be removed. An alert goes to the probation officer that the device has been removed or is malfunctioning. The alert is not received, at a minimum, until several minutes have elapsed. Once the device is removed, however, the person being monitored cannot be tracked and it takes only a few minutes for a person to commit a crime and abscond.

Regarding home confinement, this is not a viable option. Defendant has suggested that her live-in boyfriend, Mr. Paul Miller ("Mr. Miller"), serve as a third-party custodian. The record indicates that Mr. Miller works full time for the City of Dallas. No evidence in the record indicates whether Mr. Miller telecommutes or how much time he spends at his employer's place of buisniess. There is nothing in the record to establish that he can effectively assume this role. Obviously, when he is away at work, he will not have sufficient knowledge of what Ms. Liccardi is doing, or be in a position to stop her from leaving the residence. Persons who are on home confinement can only leave their residence for employment purposes, medical treatment, religious activities, and other matters approved by the probation officer. When Mr. Miller is at work, there is no way that he can effectively control or supervise Ms. Liccardi's actions.

Finally, with respect to mental health counseling, this argument is unconvincing. The record establishes that Ms. Liccardi was prescribed Lexapro in 2006 for Post-Traumatic Stress Disorder ("PTSD"); however, she stopped using the medication in 2007. No explanation is provided for her cessation. Further, she attempted to seek mental health services in 2017 through Metrocare Services in Dallas. She and Metrocare staff disagreed about the suitability of the medicine prescribed, and she lost trust in the system and ceased seeking mental health treatment. From what the court can ascertain from the record, Defendant has not sought any mental health treatment since 2017 and has not been prescribed any medications for any mental diagnosis.

Defendant now is willing to seek mental health counseling as part of a release plan. Ms. Liccardi has long known that she suffers from several serious mental disorders, yet she has not sought treatment for PTSD, bipolar disorder, depression, or mania for more than four years. The court is doubtful that she would adhere to any court-ordered conditions regarding mental health counseling in light of her past history and view toward mental health treatment.

Ms. Liccardi's criminal history includes a conviction for assault with a vehicle, which occurred in 2004, Court's Ex. 1, 5; a current and "valid" protection order issued against her in 2008, *id.*; her various social media posts condoning or threatening violence; and her admitted mental health disorders, taken together with the video evidence of her conduct related to this offense are clear indications to the court that she poses a safety threat to another person and the community.  *See* Court's Ex. 1; Gov't's Exs. 1, 2.  Therefore, the court agrees with the Magistrate Judge, and it concludes that clear and convincing evidence establishes that no condition or combination of conditions will reasonably assure the safety of another person and the community.

## IV. Conclusion

The court **concludes**, for the reasons herein explained, that the record in this case supports Defendant's pretrial detention.  The court, therefore, **denies** Defendant's Motion to Revoke Detention Order (Doc. 16); and **affirms** the Order of Detention Pending Trial (Doc. 11), entered by the Magistrate Judge on December 3, 2021.  Accordingly, Defendant **shall remain detained** pending the trial or other disposition of this case.

**It is so ordered** this 21st day of January, 2022.

                                                Sam A. Lindsay
                                                United States District Judge